**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL D. MARTIN** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:03CV480HEA/MLM** |
| | ) | |
| **MIKE KEMNA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner

Samuel D. Martin ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 4. Respondent Mike Kemna

filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted.

Doc.8. Petitioner filed a Traverse. Doc. 14. Petitioner is currently incarcerated at the Crossroads

Correctional Center. Therefore, Mike Kemna as the superintendent of that institution, is the proper

party Respondent. This matter was referred to the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b)(1). Doc. 5.

# I.
# BACKGROUND

Petitioner was charged by substitute information in lieu of indictment charging him in Count

1 with the class A felony of murder in the first degree in violation of Mo. Rev. Stat. §565.020.2, in

that on about Tuesday, February 25, 1997, at approximately 1:46 p.m., at 9995 West Florissant, in

St. Louis County, Petitioner, Patrick McDowell, and David Henderson, acting together, after

deliberation, knowingly killed James Thomas, Jr, by shooting him. In Count 2 Petitioner was

charged with armed criminal action in violation of Mo. Rev. Stat. § 571.015, in that Petitioner,

Patrick McDowell, and David Henderson, acting together, committed the felony of murder in the first

degree as charged in Count I by, with, and through the use, assistance, and aid of a deadly weapon.

See Resp. Ex. B at 50.   In Count 4 Petitioner was charged as a prior offender under Mo. Rev. Stat.

§ §558.016 and 557.036.4 in that he had previously pleaded guilty to or been convicted of a felony.

The information stated that Petitioner's prior felony was follows: on or about February 22, 1996,

Petitioner pleaded guilty to the felony of stealing a motor vehicle which offense occurred on March

31, 1995. See id. at 50-51.

Petitioner was tried before a jury commencing September 14, 1998.  The Missouri appellate

court adopted by reference the facts as stated by the State in its brief on appeal.  The facts as adopted

by the Missouri appellate court are as follows:[1]

> On February 25, 1997, at approximately 1:30 p.m., Daniel Chapman, the
> Chief of Police in Dellwood, Missouri, looked out a window at the police department
> and saw a 1988 Brown Chevrolet Celebrity pull up and park on South Floridale (Tr.
> 222, 231, 239).  The car had no front license plates (Tr. 222).  Chapman saw two
> black males get out of the vehicle (Tr. 222).  The driver, appellant, was wearing a
> "Hoyas" jacket, and the other male was wearing a white and brown "Longhorns"

---

[1]     In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a
presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v.
Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327
F.3d 748, 752 (8th Cir.2003)). The law is clear that factual findings by state trial and appellate courts
shall be presumed to be correct unless the federal court concludes that the state court findings are an
unreasonable application of the facts in light of the evidence presented. See id. Additionally, the
Eighth Circuit has held that a habeas petitioner must provide "clear and convincing" evidence "to
overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker
v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2);
Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)).  See also,  Laws v. Armontrout, 863 F.2d 1377
(8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986).  The presumption applies to
basic, primary or historical facts and the inferences that can properly be drawn regarding them. See
Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

jacket (Tr. 237, 233). The two men began to walk from the residential area where they had parked towards a Blockbuster Music Store located one-half block away (Tr. 223, 233). Because of a recent prior robbery at Blockbuster in Florissant committed by two young black males driving an older vehicle, Chapman dispatched a description of appellant and the other male and directed police units to observe the men (Tr. 226, 230, 239). Chapman left his office, got in his car, and looked at the license plates on the rear of the vehicle (Tr. 230). The car was registered to a man named David Henderson (Tr. 231). Chapman then backed his car up and parked where he could view the vehicle (Tr. 232).

James Thomas, the victim, met [Petitioner] and his companion, Patrick McDowell, outside the Blockbuster store (Tr. 260). [Petitioner] and Thomas engaged in a casual conversation outside the front of the store (Tr. 294). McDowell was pacing five to six yards away from [Petitioner] and the victim (Tr. 292, 297). [Petitioner] hugged the victim and said, "Much love, brother" (Tr. 262, 296). [Petitioner] then pulled out a gun and shot the victim numerous times (Tr. 297, 298). The victim died as a result of multiple gunshot wounds to the head and back (Tr. 442).

After [Petitioner] shot the victim, he and McDowell ran together from the scene (Tr. 327). Chris Nappier, a police officer who had shortly before been dispatched by Chief Chapman to observe [Petitioner] and McDowell, heard the shots and saw [Petitioner] fire at the victim (Tr. 353-353). He followed [Petitioner] and McDowell on foot as they ran through the back yards of houses and common areas (Tr. 356).

From his parked vehicle where he had been keeping an eye on the car [Petitioner] had earlier parked outside his office, Chief Chapman heard shots and the radio dispatch concerning the shooting, and caught sight of [Petitioner] and McDowell running towards their vehicle (Tr. 234). Chapman got out of his car, drew his gun and ordered [Petitioner] and McDowell to stop (Tr. 234).The men continued running (Tr. 234). Chapman told the men he was a police officer, but the men did not stop (Tr. 234). Chapman fired two shots (Tr. 234-235). [Petitioner] turned around and fired one round at Chapman (Tr. 234-235). The men continued to flee, but were finally apprehended and taken into custody (Tr. 356).

After being given his Miranda warnings, [Petitioner] made statements to police. In his statement given March 13, 1997, [Petitioner] told police that between noon and 12:30 p.m. that day, Patrick McDowell and Dave Henderson came to his house (Tr. 464). Henderson was paged by the victim (Tr. 464). When Henderson called the victim, they arranged to meet at the Blockbuster parking lot (Tr. 464).Henderson owed the victim over $20,000 for marijuana (Tr. 464, 513). Henderson told the victim that he was going to pay him $2,000 (Tr. 464). According

to [Petitioner], McDowell suggested that the victim should be killed because Henderson would not be able to pay the drug debt in full and did not want to be hassled by the victim (Tr. 456). McDowell said that he would kill the victim himself if McDowell had a gun (Tr. 456). [Petitioner] then went to the dresser to get a .25 caliber automatic, which he said that he test-fired from inside the house (Tr. 465). McDowell also suggested that they rob the victim (Tr. 467). [Petitioner] told police in his March 13th statement that McDowell shot the victim (Tr. 469).

In an earlier statement, [Petitioner] had told police that Patrick McDowell had the weapon and had committed the shooting (Tr. 552). After police told him that he had been identified as the shooter, [Petitioner] said that "he would take the heat for the shooting but he hadn't planned on doing it" (Tr. 553). [Petitioner] also told police that he shot the victim because a fourth person came up behind him at the Blockbuster store and began shooting, and the victim started reaching in his waistband as if reaching for a gun (Tr. 553).

Six bullets were removed from the victim, all of which were fired from the same .25 caliber semi-automatic pistol that was recovered from the sewer along [Petitioner's] and McDowell's escape rout (Tr. 438, 441, 394). Five of the six spent shell casings found at the scene of the shooting were also a positive match to that firearm (Tr. 441).

[Petitioner] testified in his defense, claiming that he shot the victim out of fear that the victim was reaching for a gun (Tr. 533).

Resp. Ex. D at 2-5.

After a hearing, the trial court found Petitioner to be a prior offender. Resp. Ex. B at 55. The jury found Petitioner guilty as charged and the trial court sentenced Petitioner to life without the possibility of parole for Count I, murder first degree, and to a consecutive term of thirty years for Count II, armed criminal action. Resp. Ex. B at 89.

Petitioner filed a direct appeal in which he raised the following issues: (1) the trial court erred in overruling Petitioner's objection to Robert Young's speculation that Petitioner said something about "much love brother" to James Thomas just before the shooting; (2) the trial court erred in precluding Petitioner from introducing Robert Young's prior testimony that he had no idea what was

said between the people outside the store to impeach his speculative testimony that someone said something like "much love brother"; (3) the trial court erred in refusing to submit a second degree murder instruction on sudden passion; (4) the trial court erred in refusing to instruct the jury on involuntary manslaughter; and (5) the trial court erred in refusing to give Petitioner's instruction on armed criminal action in connection with voluntary manslaughter. By Order, dated March 21, 2000, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. F; State v. Martin, 18 S.W.3d 397 (Mo. Ct. App. 2000). Petitioner filed for transfer to the Missouri Supreme Court which transfer was denied on June 27, 2000. Doc. 4.

On September 20, 2000, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. G at 3-25. Counsel was appointed and Petitioner filed an amended motion, which motion was denied by the motion court. Id. at 29, 34-60, 66-74. Petitioner appealed the decision of the motion court. In this appeal Petitioner raised the following issues: (1) Petitioner received ineffective assistance of trial counsel because his counsel failed to object to the State's eliciting testimony concerning Petitioner's post-Miranda invocation of his Fifth Amendment rights to silence and to counsel and failed to object to the State's using Petitioner's testimony in this regard during closing argument; (2) Petitioner received ineffective assistance of trial counsel because his counsel failed to cross-examine Dellwood Police Officer Tom Kickham regarding the fact that Officer Kickham allegedly lied about where he found the right-handed glove; and (3) Petitioner received ineffective assistance of trial counsel because his counsel failed to properly object when the prosecutor argued to the jury "trust me, he's lying" about Petitioner's testimony. Resp. Ex. H. On February 26, 2002, the Missouri appellate court affirmed the decision of the motion court denying Petitioner post-conviction relief. Resp. Ex. J; Martin v. State, 69 S.W.3d 142 (Mo. Ct. App. 2002) (per curiam). The mandate issued

on March 22, 2002. <u>Martin v. Kemna</u>, Slip Op. 05-4052 (8th Cir. June 23, 2006).

Petitioner filed a § 2254 Petition in which he raises the following issues:

1. The trial court erred in allowing Robert Young to testify as to what he heard Petitioner say immediately prior to the murder;

2. The trial court erred in excluding Robert Young's allegedly prior inconsistent statements;

3. The trial court erred in failing to instruct the jury on sudden passion in submitting a second degree murder instruction;

4. The trial court erred in failing to instruct the jury on voluntary manslaughter;

5. The trial court erred in failing to instruct the jury on armed criminal action in connection with voluntary manslaughter;

6. Petitioner received ineffective assistance of counsel because his trial counsel failed to object to an alleged reference to Petitioner's post-arrest silence;

7. Petitioner received ineffective assistance of counsel because his trial counsel failed to cross-examine witness Tom Kickham regarding Kickham's alleged lie;

8. Petitioner received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's allegedly improper comments in closing argument.

Doc. 4.

## II.
## EXHAUSTION, DEFAULT, and TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo,</u> 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims'

(citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

Petitioner has raised the issues which he raises before this court in his State appeals. As such, the court finds that he has exhausted his State remedies and that he has not procedurally defaulted any of the issues which he raises in his § 2254 Petition. Additionally, the Eighth Circuit has held that Petitioner's § 2254 Petition was timely filed. Martin v. Kemna, Slip Op. 05-4052 (8th Cir. June 23, 2006) (citing Payne v. Kemna, 441 F.3d 570 (8th Cir. 2006).

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant

a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal

law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v.

Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues

10

that would be raised. Cf. <u>Coleman v. Thompson</u>, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

<u>Id.</u> at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." <u>Id.</u> at 462 (citing <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in <u>Brown</u> that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

<u>Id.</u>

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. <u>Robinson v. Crist</u>, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." <u>Id.</u> at 865-66 (quoting <u>Hamilton v. Nix</u>, 809 F.2d 463,

470 (8th Cir.1987) (en banc)).

# IV.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980)

("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

**V.**
**DISCUSSION**

**A.**     <u>**Grounds Related to the Testimony of Robert Young**</u>:

**Ground 1 - The trial court erred in allowing Robert Young to testify as to what he heard Petitioner say immediately prior to the murder**:

In support of Ground 1 Petitioner argues that the trial judge incorrectly overruled the objection of Petitioner's counsel to testimony by witness Robert Young that Petitioner "said something like 'much love brother' to the decedent shortly before the decedent was shot." Doc. 14 at 1. Petitioner further argues that this ruling of the court deprived him of the opportunity to present a complete defense. <u>Id.</u>

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court held as

follows:

In his first point, Defendant argues that the trial court erred when it overruled his objection to Robert Young's ("Young") testimony that Defendant "said much love, brother" to James Thomas ("Victim") immediately before the shooting because this testimony constituted speculation. At trial, the State asked Young:

> Q: [by Ms. Alizadeh] As you started to walk up, did you hear any of the conversation between the two men that were talking at the front of the store?

> A. One guy - the guy in the blue jacket [Defendant] said something about much -

> Mr. Yarns: I object. Unless he knows for sure, he's speculating.

> The court: One second, sir. What is the objection?

> Mr. Yarns: He is indicating he said something about. He is going to speculate as to what he said something about. He is not giving a direct answer as to what he heard. He is speculating about it.

> Ms. Alizadeh: I believe he can paraphrase.

> The Court: Please relate as best as you recall. The objection is overruled.

> The Witness: He said much love, brother. And he hugged the guy.

The trial court has broad discretion to admit or exclude evidence at trial and we will only reverse upon a showing of clear abuse of discretion. State v. Simmons, 944 S.W.2d 165, 178 (Mo. 1997). Here, the record reflects that Young heard Defendant say "much love, brother" but was uncertain as to the context in which the statement was made. Moreover, the testimony of a witness is not to be excluded merely because the witness cannot speak with such confidence as to exclude all doubt from his mind. State v. Stigall, 700 S.W.2d 851, 857 (Mo. App. 1985). Young's qualification that Defendant's statement was "something about" "much love, brother" does not destroy the probative value of his testimony although it affects its weight. Id. Thus, the trial court did not abuse its discretion in overruling Defendant's objection to Young's testimony. Point Denied.

Pursuant to Williams, the court will consider federal law applicable to the issue raised by

Petitioner in Ground 1. The United States Supreme Court held in Estelle v. McGuire that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further held in Estelle that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert. denied, 543 U.S. 1067 (2005) (citing Estelle, 502 U.S. at 68); Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990). See also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) ("The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'") (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.1988)); Sweet v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993) ("Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries

only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process."); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so 'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process).

The Eighth Circuit held in Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995), in regard to § 2254 review by a federal court:

> [W]e will reverse a state court evidentiary ruling only if the "petitioner ⋯ show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." [Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)] (citations omitted). ... Of particular importance is the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited. Hamilton, 809 F.2d at 470. Cf. United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir.1994) (detailing this three-part inquiry for claims of prosecutorial misconduct on direct appeal).

Federal law provides that "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing

16

United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996). Even where admission of evidence is erroneous, such admission does not necessarily fatally infect a trial. See e.g., Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "particularly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]").

Additionally, under federal law it is not clear error to admit a witness's testimony "unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." United States v. Heath, 58 F.3d 1271, 1275 (8th Cir.1995). "Questions of the reliability and consistency of witness testimony are within the province of the jury." United States v. Peoples, 250 F.3d 630, 639 (8th Cir. 2001) (citing United States v. Aguayo-Delgado, 220 F.3d 926, 935 (8th Cir.2000)).

The court notes that Petitioner has not shown error which resulted in a trial so fundamentally unfair as to deny him due process of the law. See Evans, 371 F.3d at 443. Other than Petitioner's unsupported assertion that he was denied the right to present a defense as a result of the error alleged in Ground 1, Petitioner has not shown that the error asserted in Ground 1 infringed a specific constitutional right or that absent the admission of the allegedly objectionable testimony the outcome of Petitioner's trial would have been different. See Estelle, 502 U.S. at 67-68; Anderson, 44 F.3d at 679. As such, the court finds that the evidentiary error alleged in Petitioner's Ground 1 does not implicate a federal constitutional right and that, therefore, it is not reviewable pursuant to Petitioner's § 2254 Petition. Id.; Abdi, 450 F.3d at 338; Evans, 371 F.3d at 443; Logan, 994 F.2d at 1330; Scott,

915 F.2d at 1190-91; <u>Mercer</u>, 844 F.2d at 587; <u>Manning-El</u>, 738 F.2d at 322.

Moreover, the Missouri appellate court considered the probative value of Young's testimony and concluded that Young's uncertainty as to the context of Petitioner's stating "much love" goes to the weight which should be given to Young's testimony. This consideration is not contrary to federal law and is a reasonable application of federal law. <u>See</u> <u>Peoples</u>, 250 F.3d at 639; <u>Macklin</u>, 104 F.3d at 1048; <u>Heath</u>, 58 F.3d at 1271. The Missouri appellate court further considered that it was within the trial court's discretion to admit Young's allegedly objectionable testimony. Likewise, this consideration is not contrary to federal law and is a reasonable application of federal law. <u>See</u> <u>Aguayo-Delgado</u>, 220 F.3d at 935; <u>Macklin</u>, 104 F.3d at 1048. As such, the court finds, in the alternative, that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. Also, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, in the alternative, that the issue raised by Petitioner in Ground 1 is without merit and that it should be dismissed.

**Ground 2- The trial court erred in excluding Robert Young's allegedly prior inconsistent statements:**

In support of Ground 2 Petitioner argues that the trial court erred in refusing to permit Petitioner's trial counsel from introducing a statement to impeach witness Robert Young's statement at trial that Petitioner said "much love brother" before the decedent was shot. Doc. 14 at 11.

Upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court stated as follows:

> In his second point, Defendant argues that the trial court erred when it prohibited him from introducing Young's prior testimony that he had no idea what

was said by Defendant and Victim prior to the shooting. Defendant claims this testimony impeached Young's statement that he heard Defendant tell victim "much love, brother" at this time.

Defense counsel attempted to introduce the following:

> Mr. Yarns:  He was asked specifically, "And during the course of the time that they were having this conversation all you can say was that they were having a conversation, and you have no idea what was said between these people, isn't that a fair statement?"  And he answered, "That is correct; fair statement."
>
> ***
>
> The Court:  What did he say during his direct examination here in this case that this is impeachment of?
>
> Mr. Yarns:  He indicated he heard the phrase - he mentioned much love, brother, that he heard that phrase specifically mentioned.  In the prior testimony I have he indicated that he didn't hear any specific words.  He knows they were talking, but he doesn't know what they said.
> I am not planning on even mentioning the name Henderson, or anything like that.  I was planning on asking him, was he asked the question.  If he responds that he was, that's it.

The State interposed that this was not proper impeachment because Young was prevented from testifying as to the statement he heard in the earlier trial.  The trial court sustained the objection stating:

> The Court:  He didn't hear the conversation going on between the two individuals.  I don't recall him ever saying that he heard the nature of conversation between the two individuals.  He did hear, according to his testimony, a statement by the defendant, or the person wearing the Hoya jacket, Much love, brother.  But that is not the conversation.
>
> Mr. Yarns:  Included in this question is, "You have no idea what was said between these people."  I mean, that would include any single statement within the conversation, I mean, if he is framing the answer.
>
> The Court:  This is - maybe we are nitpicking here, but this isn't the conversation. If you want to ask him if he heard any of the conversation that was being conducted between the two individuals, and if he says yes to that, I will allow you to read that.  But the words

being said as he hugged the guy, it doesn't sound to me like it is part of the conversation going on.

Mr. Yarns:  Well, but he's answered the question previously under oath that he has no idea what was said between these people. I think that encompasses what was said.

The Court:   If I do that I'm going to have to allow her to read the part where the Court prevented him from saying what he was going to say, and then allow her to say, If you had been permitted in that trial, what  was your answer going to be.

***

The Court: Okay.  The objection is sustained, based upon what was just discussed.

The trial court has discretion to limit cross-examination and introduction of evidence for purpose of impeachment.  State v. Laux, 755 S.W.2d 315, 317 (Mo. App. 1988).  This discretion includes the duty to determine the relevance, materiality, an remoteness of proffered impeachment evidence.  Id.  Here, the record reflects that Young previously testified that he observed Defendant and Victim having a conversation but did not know what was said in the course of this conversation.  Yet, in the previous trial, unlike Defendant's, the trial court precluded Young from testifying as to the remark he overheard at the end of the conversation as Defendant embraced Victim.  Thus, Defendant's remark is separate from the conversation as a whole.   Because the alleged inconsistent statement goes to the nature of the conversation as a whole rather than the specific remark Young testified to hearing, the trial court did not abuse its discretion in refusing to admit his prior testimony for impeachment purposes as there must be a "real inconsistency" between the prior statement and the one made at trial before such statements will be admitted into evidence.  Id; State v. Simmons, 559 S.W.2d 557, 560 (Mo. App. 1977).  Point Denied.

Resp. Ex. F at 4-5.

The Missouri appellate court further held:

Defendant also argues that the trial court erred when it suggested that the State would be entitled to ask Young what he would have answered in the prior trial when asked about the remark made immediately before Defendant and Victim embraced.  Because the State did not ask said question and in light of our decision on this issue, we need not reach the question of whether the State could rehabilitate Young in this manner.

Resp. Ex. F at 5 n.1.

Pursuant to <u>Williams</u> the could will consider federal law applicable to the issue raised by Petitioner in Ground 2. The court has set forth above federal law applicable to a trial court's determination as to the admissibility of evidence. Specifically, in regard to the scope of cross-examination, the Eighth Circuit has held:

> "The Confrontation Clause of the Sixth Amendment guarantees to a defendant the opportunity for effective cross-examination of witnesses against him, including inquiry into the witnesses' motivation and bias." <u>United States v. Willis</u>, 997 F.2d 407, 415 (8th Cir.1993), cert. denied, 510 U.S. 1050, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994). This guarantee, however, is not without limitation. "[We] have long recognized that the trial judge must retain discretion to limit the scope of cross-examination." <u>United States v. Wood</u>, 834 F.2d 1382, 1384 (8th Cir.1987) (citations omitted); accord <u>United States v. Juvenile NB</u>, 59 F.3d 771, 778 (8th Cir.1995). Reversal of a district court's decision to limit cross-examination is warranted, therefore, "only where there has been clear abuse of discretion, and a showing of prejudice to the defendant." <u>Wood</u>, 834 F.2d at 1384.[2]

<u>United States v. Triplett</u>, 104 F.3d 1074, 1079 (8th Cir. 1987).

First, the court notes, as stated by the Missouri appellate court, that Young's statement as to what he heard Petitioner say as he embraced the victim was separate from the conversation to which Young referred when he said he did not know what was said. The alleged inconsistent statement went to the nature of the conversation as a whole rather than the specific remark to which Young testified he heard. Thus, Young's alleged inconsistent statement does not contradict Young's testimony that he heard Petitioner say "much love." Under such circumstances Petitioner cannot establish that he was prejudiced as a result of the trial court's limiting cross-examination of Young. The court finds, therefore, no specific constitutional right was infringed as a result of the trial court's

---

[2]      <u>United States v. Wood</u>, 834 F.2d 1382, 1384 (8th Cir. 1987), was abrogated on other grounds by <u>Aguayo-Delgado</u>, 220 F.3d 926.

limiting cross examination of Young. See Evans, 371 F.3d at 443; Abdi, 450 F.3d at 338. The court finds, therefore, that the issue which Petitioner raises in Ground 2 is not reviewable pursuant to §2254. See Estelle, 502 U.S. at 67-68.

Additionally, the Missouri appellate court considered that trial judges are afforded discretion in limiting cross examination which is intended to impeach and that considerations for the trial court in this regard are relevance, materiality, and remoteness of the proffered evidence. As such, the court finds, in the alternative, that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable interpretation of federal law. See Triplett, 104 F.3d at 1079; Wood, 834 F.2d at 1384. The court further finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.

**B.      Grounds Regarding the Trial Court's Refusal to Give Petitioner's Proffered Jury Instructions:**

**Ground 3 - The trial court erred in failing to instruct the jury on sudden passion in submitting a second degree murder instruction**:

**Ground 4- The trial court erred in failing to instruct the jury on voluntary manslaughter:**

**Ground 5 -The trial court erred in failing to instruct the jury on armed criminal action in connection with voluntary manslaughter:**

Petitioner argues that the refusal of the trial court to instruct the jury in regard to second degree murder, voluntary manslaughter, and armed criminal action with regard to voluntary manslaughter deprived him of liberty without due process and violated his right to a fair trial before an impartial jury. Doc. 14 at 27, 41, 52. Petitioner contends that testimony supports his position that these instructions should have been given.

Upon addressing the issue of Grounds 3-5 the Missouri appellate court stated as follows:

Defendant argues that the trial court erred in refusing his Instructions A (modified murder second), B (voluntary manslaughter), and C (armed criminal action in connection with voluntary manslaughter). He argues that these instructions were supported by his testimony that he feared for his life when he shot Victim. We disagree.

The trial court instructed the jury on first degree murder, MAI-CR3d 313.02, armed criminal action, MAI-CR3d 332.02.1 and, on defendant's request, second degree murder, MAI-CR3d 313.04, armed criminal action in connection with second degree murder, MAI-CR3d 332.02.2, and self -defense, MAI-CR3d 306.06. Defendant also tendered instructions submitting the special negative defense of sudden passion arising from adequate cause based on MAI-CR3d 313.04, voluntary manslaughter based on MAI-CR3d 313.08, and armed criminal action in connection with voluntary manslaughter, MAI-CR3d 332.02. The trial court refused these instructions.

In deciding whether Defendant was entitled to these instructions, we review the evidence in the light most favorable to him. State v. Howard, 949 S.W.2d 177, 180 (Mo. App. 1997). The trial court is required to instruct on a lesser included offense if the evidence, in fact or by inference, provides a basis for both an acquittal of the greater offense and a conviction of the lesser offense, and if such instruction is requested by one of the parties or the court. State v. Redmond, 937 S.W.2d 205, 208 (Mo. 1996).

Acting "under the influence of sudden passion arising from adequate cause" is a special negative defense to the crime of conventional murder. State v. Blackman, 875 S.W.2d 122, 131 (Mo. App. 1994). If there is evidence that defendant killed the victim under the influence of sudden passion arising from adequate cause, an instruction submitting conventional murder in the second degree must submit, as an element of the crime, a third paragraph "that defendant did not do so under the influence of sudden passion arising from adequate cause." Id. Further, the trial court must also give MAI-CR3d 313.08 on voluntary manslaughter. Id. See also section 565.023 RSMo 1994; MAI-CR3d 313.04 Notes on Use 4.

Here there is no reasonable basis to suggest that the jury would have reduced Defendant's conviction had they been presented with these instructions. The element of deliberation sets first degree murder apart from all other forms of homicide. State v. O'Brien, 857 S.W.2d 212, 217 (Mo. 1993). The jury, when presented with instructions on murder in the first degree and murder in the second degree, had the opportunity to find that Defendant's actions were not deliberate. State v. Jones, 979 S.W.2d 171, 185 (Mo. 1998). Because the jury convicted Defendant of first degree

murder, as opposed to second degree murder, there is no reasonable basis to suggest that the jury would not have convicted Defendant of first degree murder had the murder second instruction been modified and the voluntary manslaughter instruction been submitted.  Id.; State v. Smith, 944 S.W.2d 901, 918-19; State v. Barnett, 980 S.W.2d 297, 305-06 (Mo. 1998).  Defendant was not prejudiced by the trial court's refusal to give these instructions.  We also need not address whether sufficient evidence existed to support submission of a modified murder second instruction and the voluntary manslaughter instruction.  Where, as here, instructions are submitted on both the first degree and second degree murder, and the jury finds the defendant guilty of murder in the first degree, it is unnecessary to decide whether there was sufficient evidence to support the manslaughter instruction, "for no reasonable basis exists to suggest that the jury would have exercise[d] greater leniency and reduced the conviction to manslaughter.'" State v. Smith, 781 S.W.2d 761, 765-66 (Mo. 1989) rev'd on other grounds, 495 U.S. 916, 110, S.Ct. 1944 (1944)  (citing State v. Merritt, 734 S.W.2d 926, 932 (Mo. App. 1987)).  Point denied.

Resp. Ex. F at 5-7.

The Missouri appellate court further held that it was applying the reasoning set forth above to the "corresponding armed criminal action instruction."  Id. at 7.

Pursuant to Williams, the court will consider federal law applicable to the issues raised in Petitioner's Grounds 3-5.   The United States Supreme Court holds that instructional error is generally a matter of state law and that it only rises to the level of a constitutional issue where the instruction, by itself, so infected the trial in a manner which resulted in a conviction which violates due process.  Estelle, 502 U.S. at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'").  The Court in Estelle further held that:

It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. Cupp v. Naughten, supra, 414 U.S., at 147, 94 S.Ct., at 400-01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the

24

> challenged instruction in a way" that violates the Constitution. <u>Boyde v. California</u>,
> 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). And we also bear
> in mind our previous admonition that we "have defined the category of infractions that
> violate 'fundamental fairness' very narrowly." <u>Dowling v. United States</u>, 493 U.S. 342,
> 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees
> enumerated in the Bill of Rights, the Due Process Clause has limited operation." <u>Ibid.</u>

502 U.S. at 72-73.

"'The Supreme Court has made it clear that the states define the elements of state offenses'
and 'in general there is no constitutional reason why a state offense must include particular
elements.'" <u>Carson v. Director of Iowa Dep't of Corr. Servs.</u>, 150 F.3d 973, 976 (8th Cir. 1989)
(quoting <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3rd Cir. 1997) (citing <u>McMillan v. Pennsylvania</u>,
477 U.S. 79, 84-86 (1986)).

Moreover, under federal law instructional errors which rise to the level of constitutional
violations cannot be the basis for habeas relief if they are harmless. <u>Seiler v. Thalacker</u>, 101 F.3d 536,
539 (8th Cir.1996). Also, under federal law a trial court has considerable discretion in formulating
jury instructions. <u>United States v. Richmond</u>, 700 F.2d 1183, 1195 (8th Cir.1983), <u>abrogated on other
grounds</u>, <u>United States v. Raether</u>, 82 F.3d 192 (8th Cir. 1996). An appellate court will not reverse
a conviction when the jury instructions given to the jury correctly stated the law. <u>United States v.
Paul</u>, 217 F.3d 989, 997 (8th Cir.2000).

In <u>Tatum v. Dormire</u>, 183 F.3d 875, 878 (8th Cir. 1999), the Eighth Circuit specifically
addressed the issue of the whether a state prisoner charged with first degree murder is denied
constitutional rights if the jury is not given an instruction on a lesser included offense. In <u>Tatum</u> a
Missouri habeas petitioner, who was convicted of first degree murder argued that the jury should
have been given a voluntary manslaughter instruction. The jury in <u>Tatum</u> was given a second degree

murder instruction as well as the first degree instruction as was the jury in the matter under consideration. The Eighth Circuit held in <u>Tatum</u> as follows:

> [The habeas petitioner] apparently argues that Missouri law entitled him to the proffered voluntary manslaughter and second degree murder instructions on Count I and to the involuntary manslaughter instruction on Count III, and therefore that the state trial court's refusal to give the instructions deprived him of the process he was due under the Fourteenth Amendment. <u>Cf.</u> <u>Pitts v. Lockhart</u>, 911 F.2d 109, 112 (8th Cir.1990) ("[Other] circuits ... have held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question. We agree that the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question." (citations omitted)), <u>cert. denied</u>, 501 U.S. 1253, 111 S.Ct. 2896, 115 L.Ed.2d 1060 (1991); <u>see also</u> <u>Green v. Groose</u>, 959 F.2d 708, 709 (8th Cir.1992). [The petitioner] seizes upon the "rarely, if ever" language in <u>Pitts</u> for the proposition that a trial court's refusal to give a lesser included offense instruction supported by the evidence in a noncapital case could, in some as yet undetermined circumstance, rise to an issue of constitutional dimension. [The petitioner] further is convinced that his is that elusive case. We are satisfied that it is not.

> Even were we to assume that a trial court's failure to instruct the jury on a lesser included offense in a noncapital case could ever amount to a constitutional issue for habeas review, [the petitioner's] claim would fail, for his proffered instructions allowing the jury to consider sudden passion were not supported by the evidence at trial. If, in a capital case, "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction," <u>Hopper v. Evans</u>, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (emphasis in original); <u>see also</u> <u>Reeves v. Hopkins</u>, 102 F.3d 977, 983 & n. 10 (8th Cir.1996), <u>rev'd on other grounds</u>, 524 U.S. 88, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998); <u>Williams v. Armontrout</u>, 912 F.2d 924, 928-30 (8th Cir.1990), <u>cert. denied</u>, 498 U.S. 1127, 111 S.Ct. 1092, 112 L.Ed.2d 1197 (1991), then a fortiori due process is not offended when a state trial court refuses in a noncapital case to submit an instruction not supported by the evidence.

183 F.3d at 878.

The Eighth Circuit further commented in <u>Tatum</u> on the circumstances under which Missouri law requires that an instruction of a lesser included offense should be given and held that:

[E]ven assuming that passion drove [the petitioner's] actions, Missouri law requires, for the reduction of an offense to one less culpable, passion "directly caused by and arising out of provocation by the victim ... which passion arises at the time of the offense and is not solely the result of former provocation." Mo.Rev.Stat. § 565.002(7) (1994); State v. Price, 928 S.W.2d 429, 431 (Mo.Ct.App.1996). The evidence adduced at trial showed that neither of [the petitioner's] victims had any opportunity to provoke [the petitioner] before he inflicted the fatal gunshot wounds. ...

Furthermore, the degree of passion contemplated by Missouri law is "so extreme that for the moment, the action is being directed by passion, not reason." Price, 928 S.W.2d at 431. That is, the evidence must reveal "a degree of passion ... sufficient to substantially impair an ordinary person's capacity for self-control." Mo.Rev.Stat. § 565.002(1) (1994) (defining adequate cause); State v. Scheets, 849 S.W.2d 637, 638 (Mo.Ct.App.1993). The evidence at trial did not support [the petitioner's] claim that he acted under such a degree of passion.

183 F.3d at 878-79.

The Eighth Circuit further commented in Tatum that "[e]ven if the evidence could have supported a voluntary manslaughter instruction," it is not likely that an involuntary manslaughter instruction would have changed the jury's verdict of first degree murder as the jury was also instructed on second degree murder. Id. at 879 n.5.

As noted by the Missouri appellate court, there is no basis upon which to assume that the jury would have convicted Petitioner of a lesser offense if they had been given the instructions which Petitioner contends should have been given regarding sudden passion, voluntary manslaughter, and armed criminal action in regard to voluntary manslaughter because the jury was required to find deliberation in order to convict Petitioner of first degree murder as charged. Because the jury was also presented with a second degree murder instruction it was presented with the alternative of finding that Petitioner's conduct was not deliberate. The jury, however, convicted Petitioner of first degree murder, thus finding the requisite deliberation. The court finds, therefore, in agreement with

the Missouri appellate court, that Petitioner cannot establish that he was prejudiced by the failure to give his proffered instructions. Under such circumstances it cannot be said that Petitioner suffered a violation of any constitutional right as a result of refusal of the trial court to grant instructions regarding sudden passion, voluntary manslaughter, and armed criminal action with regard to voluntary manslaughter. See Estelle, 502 U.S. at 72-73; Carson, 150 F.3d at 976. The court finds, therefore, that the issues raised in Petitioner's Grounds 3-5 fail to raise a constitutional issue and that, as such, they are not reviewable pursuant to Petitioner's § 2254 Petition. See Estelle, 502 U.S. at 72; Tatum, 183 F.3d at 878-79.

Significantly, the Missouri appellate court concluded that Petitioner was not prejudiced by the failure of the trial court to give Petitioner's proffered instructions. As stated above, under federal law, instructional errors which rise to the level of constitutional violations cannot be the basis for habeas relief if they are harmless. Tatum, 183 F.3d at 879 n.5; Seiler, 101 F.3d at 539. Additionally, the court notes in regard to Petitioner's suggestion that he acted under sudden passion, Petitioner himself testified that he shot the victim when it looked like the victim was reaching for a gun.[3] Petitioner did not testify to circumstances suggesting sudden passion. As such, the court finds, in the alternative, that the Missouri appellate court's decision in regard to the issues raised in Petitioner's Grounds 3-5 is not contrary to federal law and that it is a reasonable application of federal law. See Tatum, 183 F.3d at 879 n.5; Seiler, 101 F.3d at 539. Moreover, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, in the alternative, that

---

[3]  Petitioner testified that McDowell told the victim that he was "gonna find [himself] messed up"; that Petitioner was "scared"; that after Petitioner heard a gunshot it looked like the victim "was reaching in his coat for a gun"; and that Petitioner then "pulled a gun out of [his] pack and [] shot." Resp. Ex. A at 491-95.

Petitioner's Grounds 3-5 are without merit and that they should be dismissed.

**C.      Ineffective Assistance of Counsel Claims**:[4]

**Ground 6-Petitioner received ineffective assistance of counsel because his trial counsel failed to object to an alleged reference to Petitioner's post-arrest silence:**

Petitioner contends that he was denied effective assistance of trial counsel when counsel failed

to object to the prosecutor's offering evidence regarding Petitioner's post- arrest silence.

Upon addressing all of Petitioner's claims of ineffective assistance of counsel the Missouri

appellate court first considered the holding of the United States Supreme Court in <u>Strickland</u>, 466

U.S. at 686, as set forth above, and held that <u>Strickland</u>'s standard is applicable to Petitioner's claims

---

[4]      In support of his claims of ineffective assistance of trial counsel, Petitioner challenges Missouri procedure whereby the trial judge is the same judge who presides over a defendant's post-conviction relief motion. He suggests that this procedure denies a defendant his "day in court" in regard to claims of ineffective assistance of trial counsel. Doc. 14 at 69. The court notes, however, that Missouri procedure provides for appeal of the motion court's decision and for application to transfer to the Missouri Supreme Court.  Most significantly, § 2254 provides a remedy for any claimed denial of constitutional rights in state courts.

Petitioner also argues that he was improperly denied a hearing by the motion court. Under Missouri post-conviction relief procedures, "in order to be entitled to an evidentiary hearing, a movant must satisfy the procedural requirement that his petition allege facts, not conclusions, which if true would warrant relief." <u>Smith v. Goose</u>, 998 F.2d 1439 (8th Cir. 1993) (citing Rule 24.035(g); <u>State v. Blankenship</u>, 830 S.W.2d 1, 16 (Mo. 1992) (en banc)).

In regard to procedures in the State motion court, § 2254 authorizes federal courts to review the constitutionality of a state criminal conviction, but does not authorize federal courts to review infirmities in state post-conviction relief proceedings. <u>See</u> <u>Mitchell v. Wyrick</u>, 727 F.2d 773, 774 (8th Cir. 1984).  Indeed, "infirmities in [a] state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction," because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions.  <u>Williams v. State of Missouri</u>, 640 F.2d 140, 143-44 (8th Cir. 1981).  Thus, to the extent Petitioner claims that he should be afforded habeas relief because of motion court procedures these claims are collateral to his conviction and detention.  As such, they are  not cognizable pursuant to a §  2254 petition.  <u>See</u> <u>Williams-Bey v. Trickey</u>, 894 F.2d 314, 317 (8th Cir. 1991).

of ineffective assistance of counsel. In particular, the Missouri appellate court acknowledged the two-pronged test of <u>Strickland</u> and noted that it "need not address both components of the inquiry if the movant makes an insufficient showing on one." Resp. Ex. J at 3. The court further considered the standard for determining whether counsel's performance was reasonable and the standard for determining whether a criminal defendant is prejudiced by counsel's performance as set forth in <u>Strickland</u>. <u>See</u> <u>id.</u>

In regard to Petitioner's claim in Ground 6 that his counsel was ineffective for failing to object to testimony and argument regarding Petitioner's Fifth Amendment right to silence, the Missouri appellate court held as follows:

> [Petitioner] alleged that trial counsel was ineffective for allowing, without objection, the State to elicit testimony concerning Movant's post-<u>Miranda</u> invocation of his Fifth Amendment right to silence and to counsel and to use the invocation as substantive evidence of [Petitioner's] guilt by arguing it in closing argument.

> [Petitioner] testified in his own defense at trial. In his motion, [Petitioner] alleged that trial counsel was ineffective for failing to object to the following exchange during cross-examination of Movant:

> Q.    All right. Now, you don't tell them, I shot this guy in self-defense, do you?
> A.    Oh, yes I do.
> Q.    You did?
> A.    Yes, I did.
> Q.    You told the police that day?
> A.    Not that day I didn't tell them.
> Q.    You don't tell them at all that day?
> A.    I told them that day, I told them that I didn't want to answer any questions without the presence of an attorney.

> Just prior to this exchange, the prosecutor asked [Petitioner] "And as you were running, you finally stop because there is the police?" to which Movant replied, "Yes."

> In its judgment denying [Petitioner's] motion, the motion court found the

following:

> Prior to this soliloquy, there had been testimony from the arresting officer, Ptn. Napier, that [Petitioner] was apprehended immediately following the shooting. There was no testimony from Officer Napier or any other police officer that [Petitioner] was given his Miranda warnings or was questioned or made any statements at this time. The prosecutor's inquiry was not addressed to [Petitioner] silence during interrogation, but rather to his silence when apprehended by police. It is permissible for the State to use a defendant's immediate post-arrest, pre-Miranda warning silence for purposes of impeaching when a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony and his silence is probative of inconsistencies in that testimony. (citations omitted). Because [Petitioner's] testimony raised a natural and reasonable expectation that he would have made an exculpatory statement at the time of his arrest, the State's questions regarding [Petitioner's] silence at the time of his arrest as to the events of the day were probative of an inconsistency in his testimony at trial. [Petitioner's] comment that he had requested an attorney was an unresponsive answer to the prosecutor's question, a question that clearly was not designed to be a comment on [Petitioner's] post-Miranda silence.

Resp. Ex. J at 4-5.

Upon finding that the decision of the motion court as set forth above was not clearly erroneous, the Missouri appellate court considered that "where a defendant's post-arrest silence is not based upon Miranda warnings or by an express assertion of the Fifth Amendment right to silence, a defendant's due process is not violated where he voluntarily takes the stand and is subjected to cross-examination." Id. at 6-7. Additionally, the Missouri appellate court considered that "the State may use a defendant's immediate post-arrest, pre-Miranda silence for purposes of impeaching his testimony when 'a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony' and the silence is probative of inconsistencies in that testimony." Id. at 7 (citations omitted). The Missouri appellate court further noted that "[w]here a defendant later offers an explanation for his conduct under circumstances suggesting he would naturally have given the explanation earlier, if true, his previous silence may be used for impeaching purposes if his silence was

not the result of an exercise of a constitutional right." Id.

The Missouri appellate court then held as follows:

> The record does not indicate that [Petitioner] received his <u>Miranda</u> warnings prior to his silence. On February 25, 1997, [Petitioner] ran approximately two blocks from the scene of the murder before being apprehended, arrested, and taken into police custody. According to [Petitioner] at some point that day, he told police that he did not want to answer any questions without the presence of an attorney. On February 26, [Petitioner] was served at the St. Louis County Jail with a warrant charging him with first-degree murder and armed criminal action. On March 7 and March 13, [Petitioner] made statements to the police indicating that another person shot the victim. Prior to each of these statements, [Petitioner] received his <u>Miranda</u> warnings and indicated that he understood and waived those rights.

> Further, at trial, [Petitioner] claimed that he shot the victim in self-defense. The nature of [Petitioner's] self-defense claim raises a reasonable expectation that he would have related it to police at the time of his arrest and his silence is probative of inconsistencies in his statements and his testimony at trial.

> Thus, the State did not improperly use [Petitioner's] silence, as it was used for impeachment purposes. Trial counsel will not be found ineffective for failing to make meritless objections. <u>State v. Clay</u>, 975 S.W.2d 121, 135, (Mo. banc 1998). Therefore, [Petitioner] has not shown by a preponderance of the evidence that trial counsel's failure to object to his testimony was deficient performance.

Resp. Ex. J. at 7-8.

Pursuant to <u>Williams</u>, the court will consider federal law applicable to the ineffective assistance of counsel claims raised by Petitioner in Ground 6. In regard to impeaching a defendant by using his silence the United States Supreme Court has held that:

> In <u>Doyle v. Ohio</u>, 426 U.S., at 619, 96 S.Ct., at 2245, we held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving <u>Miranda</u> warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." This rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" <u>Wainwright v. Greenfield</u>, 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623 (1986) (quoting <u>South Dakota v. Neville</u>, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983)). The

"implicit assurance" upon which we have relied in our <u>Doyle</u> line of cases is the right-to-remain-silent component of <u>Miranda</u>. Thus, *the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest*, <u>Jenkins v. Anderson</u>, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), *or after arrest if no <u>Miranda</u> warnings are given*, <u>Fletcher v. Weir</u>, 455 U.S. 603, 606-607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982) (per curiam ). Such *silence is probative* and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. See 447 U.S., at 239, 100 S.Ct., at 2129.

<u>Brecht v. Abrahamson</u>, 507 U.S. 619, 628 (1993) (emphasis added).

Additionally, the Supreme Court has held:

> In the absence of the sort of affirmative assurances embodied in the <u>Miranda</u> warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

<u>Fletcher v. Weir</u>, 455 F. 603, 607 (1982).

The Eighth Circuit has stated as follows in regard to the waiver of the Fifth Amendment right to remain silent once a defendant has taken the witness stand:

> A criminal defendant who takes the stand in his own behalf "cannot avoid testifying fully." <u>See</u> <u>Jenkins v. Anderson</u>, 447 U.S. 231, 236 n. 3, 100 S.Ct. 2124, 2128 n. 3, 65 L.Ed.2d 86 (1980). Once the choice to testify is made, "[t]he interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant...." <u>Id</u>. at 238, 100 S.Ct. at 2129. ... The prosecution thus "did no more than utilize the traditional truth-testing devices of the adversary process." <u>Id.</u> The district court did not abuse its discretion in determining the proper scope of cross-examination. <u>See</u> <u>United States v. NB</u>, 59 F.3d 771, 777 (8th Cir.1995) (standard of review).

<u>United States v. Williams</u>, 87 F.3d 249, 253 (8th Cir.1996).

Both the motion court and the Missouri appellate court concluded that it is permissible for the prosecution to refer to a defendant's silence prior to receiving his <u>Miranda</u> warnings for purposes of impeaching the defendant's testimony where there is "a neutral expectancy of an exculpatory

statement" and where a defendant's silence is probative of inconsistencies in that testimony." This holding is not contrary to federal law and is a reasonable application of federal law set forth above. See Brecht, 507 U.S. at 619-20; Fletcher, 455 U.S. at 607; Williams, 87 F.3d at 253. Moreover, as noted by the Missouri appellate court, Petitioner initially refused to talk to police after he was apprehended and given his Miranda warnings. Petitioner told police several weeks after the murder that someone else committed this crime but at trial he testified that he shot the victim in self defense. Under such circumstances there was a neutral expectancy of an exculpatory statement at the time of Petitioner's initial apprehension and his silence at that time is indicative of inconsistencies in his testimony at trial. It was, therefore, proper pursuant to federal law to permit the prosecution to cross-examine Petitioner regarding his silence. See Brecht, 507 U.S. at 619-20; Fletcher, 455 U.S. at 607; Williams, 87 F.3d at 253.

As set forth above, the Missouri appellate court applied Strickland's standard for determining whether a defendant received effective assistance of counsel. The Missouri appellate court further held, consistent with federal law, that trial counsel cannot be held ineffective for failing to raise a meritless objection. See Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) ("[The petitioner's] claim fails because [he] cannot show that his counsel performed deficiently by failing to raise a meritless argument."). The court finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's claim in Ground 6 that he received ineffective assistance of counsel because his counsel failed to object to cross-examination of Petitioner is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 6 is without merit and that it should be dismissed.

**Ground 7-Petitioner received ineffective assistance of counsel because his trial counsel failed to cross-examine witness Tom Kickham regarding Kickham's alleged lie**:

Petitioner argues in support of Ground 7 that his counsel was ineffective for failing to cross examine Dellwood Police Officer Tom Kickham regarding his testimony that Petitioner was wearing only one glove and that the implication from this testimony was that Petitioner was wearing the glove to avoid leaving fingerprints rather than for protection from the elements. Petitioner contends that he was prejudiced in this regard because as a result of counsel's failure to cross examine Officer Kickham the prosecutor was able to use the glove to prove the element of deliberation necessary for a first-degree murder conviction. Doc. 14 at 101-102. Petitioner also argues that he testified that he did not wear gloves at the relevant time and that police lied when they testified that a single glove was found in Petitioner's possession. Doc. 14 at 102.

Upon addressing the issue raised by Petitioner in Ground 7, the Missouri appellate court held as follows:

> In his second point on appeal, [Petitioner] argues that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because [Petitioner] alleged that trial counsel was ineffective for failing to cross-examine police officer Tom Kickham (Kickham) regarding Kickham's alleged lie about where he found the right-handed glove. [Petitioner] maintains that (1) a crime lab report not offered at trial identifies a "brown drivers glove" as specimen "Q-2F" and this glove belonged to [Petitioner's] co-defendant, Patrick McDowell (McDowell), not [Petitioner], (2) specimen "Q-2F" is State's Exhibit 36, (3) the evidence for the crime lab report was submitted to the lab by Kickham, and (4) [Petitioner] brought the crime lab report to trial counsel's attention a few days before trial.

> At trial, State's Exhibit 36 was a right-handed glove. Kickham testified that he seized the glove from [Petitioner's] clothing shortly after his arrest but found no left-handed glove. [Petitioner] testified that the glove did not belong to him, that he did not have the glove when he was arrested, and that the police were lying.

> During closing argument, the prosecutor stated the following:

I will tell you one of the reasons why we know that this was deliberate, is because you heard the police testify that they took from [Petitioner] one right-handed glove. No mate was found to this glove. Now, unless you're Michael Jackson you don't wear one glove. Except when you want to make sure you don't leave fingerprints on a gun, when you don't want to get gunshot residue on your hands. You wear a glove to avoid police detection. If you are going to use a gun, you would wear a glove to avoid police detection.

The Missouri appellate court then referred to the following finding of the motion court:

[Petitioner's] point fails for several reasons. First, [Petitioner] makes a number of assumptions, none of which are clear from the record: that State's Exhibit 36 is the glove known as laboratory specimen Q-2F; that it was [Kickham] who submitted the glove to the laboratory for analysis; and that [Kickham] told someone at the laboratory that the glove was seized from [McDowell]. [Petitioner's] motion must state facts, not conclusions or speculation, upon which he bases his claim for relief.

Second, even if this Court were to assume that the above premises are true, trial counsel still could not impeach the witness with a document which was prepared by and contained statements of another person, namely: [the Examiner]. The document did not contain statements of [Kickham]. Therefore, he could not be impeached with an inconsistent statement of another witness.

Third, even assuming the above premises are true, and assuming that defense counsel could have successfully impeached [Kickham's] credibility with an inconsistent statement, such would not be grounds for post-conviction relief because the facts, even if true, do not establish a defense. [Petitioner] argues that the State relied on evidence of the glove as proof of deliberation on the part of [Petitioner] and therefore, if the jury were to believe that the glove was not seized from [Petitioner], the State would not have any evidence of deliberation. However, the State presented other evidence of deliberation, namely, [Petitioner's] own statement wherein he told the police that he and the co-defendants planned the murder some two hours before the crime and that he provided co-defendant McDowell with the weapon to kill the victim. Furthermore, the State presented testimony from several eye witnesses to the shooting, all who identified [Petitioner] as the shooter and described [Petitioner] acting without provocation or passion. [Petitioner's] argument that there is a reasonable probability that but for trial counsel's error the outcome of the proceeding would have been different is not convincing. The evidence of deliberation in this case was overwhelming.

Resp. Ex. J at 9-11.

After considering the decision of the motion court the Missouri appellate court found that the

motion court's findings of fact and conclusions of law were not clearly erroneous and further held that:

> We agree with the motion court that even if State's Exhibit 36 was not found on [Petitioner], [Petitioner] was not prejudiced by trial counsel's failure to cross-examine Kickham regarding Kickham's alleged lie about where he found the glove. [Petitioner] maintains that this failure prejudiced him because the State used the glove to prove the deliberation element for first-degree murder. As the motion court noted, the State presented other evidence of deliberation, and the prosecutor also reviewed that evidence in closing argument.
>
> Therefore, [Petitioner] has not shown that, but for trial counsel's alleged deficient performance, there was a reasonable probability that the result of the proceeding would have been different and accordingly, no prejudice to the defense occurred.

Resp. Ex. J at 11.

The court has set forth above the standard applicable to a claim of ineffective assistance of counsel. Additionally, "'[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." Anderson v. Bowersox, 262 F.3d 839, 841 (8th Cir. 2001) (quoting Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir.2001)). In regard to the prejudice prong of the two-part test articulated in Strickland as applied to the failure to cross-examine a witness, a habeas petitioner must show that there is a reasonable probability that had counsel cross-examined the witness the outcome of his trial would have been different. Id. at 842. Where failure to cross-examine a witness is harmless error, a habeas petitioner cannot establish the requisite prejudice. Williams v. Armontrout, 877 F.2d 1376, 1382-83 (8th Cir. 1989).

As stated above, the Missouri appellate court applied the two-pronged test of Strickland to the issue raised by Petitioner in Ground 7. Consistent with Strickland, the Missouri appellate court concluded that Petitioner cannot establish that he received ineffective assistance of counsel as he was

not prejudiced by the failure of his counsel to cross-examine Officer Kickham regarding the right-handed glove because there was evidence of deliberation other than the glove.  Additionally, assuming that the lab report did state that the glove belonged to McDowell, Officer Kickham did not write the lab report.  As such, Officer Kickham's testimony that he seized the glove from Petitioner would not have been impeached by the lab report.  Moreover, as considered by the Missouri court, Petitioner has not suggested facts which if true would establish a defense.  In such circumstances, Petitioner cannot establish that the outcome of his trial would have been different had his counsel cross-examined Officer Kickham concerning the location of the glove.  Strickland, 466 U.S. at 688-89; Anderson, 262 F.3d at 839; Williams, 877 F.2d at 1382-83.  The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 7 is not contrary to federal law and that it is a reasonable application of federal law.  Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.   As such, the court finds that Petitioner's Ground 7 is without merit and that it should be dismissed.

**Ground 8 - Petitioner received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's allegedly improper comments in closing argument:**

Petitioner alleges that trial counsel was ineffective for failing to object to the following comments made by the prosecutor during closing argument:

Well, what did [Petitioner] tell you on the stand?  He said the day he got arrested he wouldn't talk to the police.  He said, I wouldn't talk to them.  I told them I wouldn't talk to them unless I had an attorney.  So you know at that point he says, I am not going to tell you what happened.

You know if you are innocent, you are going to say what happened.  You want to tell somebody your story.  You tell them the truth.  And then, you know

what?  You repeat it as many times as it takes.  You stick with the truth.

Upon considering the issue raised by Petitioner in Ground 8, the Missouri appellate court noted that the motion court found as follows in regard to the allegedly objectionable closing argument by the prosecutor:

> Had trial counsel objected to the above argument, his objection would have been overruled, as the argument was appropriate retaliation for comments made by the defense attorney during his closing argument:
>
> [Defense Attorney]:  [Petitioner] got up on the stand because he wanted to tell you what happened that day.  He wanted to tell you all what happened that day.  Because for awhile after he was arrested he wondered if he was ever going to get a chance to tell anybody what happened.
> ...
>
> So [Petitioner] shoots him, as he told you.  He got up on the stand in front of you, in front of family members in the courtroom, and admitted that he shot a man, because he wanted to tell you about what happened.  Because the day after he was arrested he was taken to St. Louis County Jail on the 26th, served with a warrant for Murder in the First Degree and Armed Criminal Action.  And then it was March 7th before anybody talked to him about this.
>
> Any objection made by trial counsel would have been without merit given that the comments made by the prosecutor were in retaliation to comments made by defense during his closing argument. Failure to make a meritless objection is not grounds for ineffective assistance of counsel.

Resp. Ex. J at 6.

The Missouri appellate court then found as follows:

> [Petitioner's] challenge to the prosecutor's comments during closing argument fails for the same reasons [stated above in regard to Petitioner's Ground 6].  Further the prosecutor's comments were proper retaliation for defense counsel's closing argument, as cited by the motion court.  A prosecutor may retaliate to an issue raised by the defense even if the prosecutor's comments would be improper.  <u>Id.</u>  A prosecutor is permitted to exceed the normally recognized limits of closing argument in retaliation to defense counsel's argument.  <u>State v. Hill</u>, 808 S.W.2d 882, 887 (Mo. App. E.D. 1991). A defendant may not provoke reply to his own argument and then

assert error. <u>State v. Kreutzer</u>, 928 S.W.2d 854, 875 (Mo. banc 1996). Therefore, [Petitioner] has not shown by a preponderance of the evidence that trial counsel's failure to object to the prosecutor's closing argument was deficient performance.

Even if trial counsel's performance was deficient, [Petitioner] has not shown that, but for counsel's deficient performance, there was a reasonable probability that the result of the proceeding would have been different. The exchange between the prosecutor and [Petitioner] during his cross-examination was brief and, as the motion court indicated, [Petitioner's] comment that he had requested an attorney was an unresponsive answer to the prosecutor's question. The prosecutor's comments during closing argument were equally limited, and [Petitioner] has not shown that the State developed a theme to infer [Petitioner's] exculpatory evidence, including his statements and testimony, were inconsistent. We have already affirmed [Petitioner's] conviction and sentence. The overwhelming evidence supporting his conviction included testimony by witnesses that [Petitioner] was the shooter without physical confrontation by the victim. Thus, [Petitioner] has not shown that trial counsel's alleged deficient performance prejudiced the defense.

Therefore, trial counsel was not ineffective for failing to object to [Petitioner's] testimony and the prosecutor's closing argument.

Resp. Ex. J at 8-9.

Pursuant to <u>Williams</u> the court will consider federal law applicable to the issue raised by Petitioner in Ground 8. Under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986); <u>Moore v. Wyrick</u>, 760 F.2d 884, 886 (8th Cir. 1985). <u>See also</u> <u>Culkin v. Purkett</u>, 45 F.3d 1229, 1235 (8th Cir. 1995); <u>Pollard v. Delo</u>, 28 F.3d 887, 890 (8th Cir. 1994). A habeas petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. <u>See</u> <u>Crespo v. Armontrout</u>, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the

resulting conviction a denial of due process.'" <u>Mack v. Caspari</u>, 92 F.3d 637, 643 (8th Cir. 1996)

(quoting <u>Darden</u>, 477 U.S. at 181). As further said by the Supreme Court in <u>Donnelly v.</u>

<u>DeChristoforo</u>, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. <u>See</u> <u>United States v. McGuire</u>, 45 F.3d 1177, 1189 (8th Cir.1995); <u>United States v. Hernandez</u>, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." <u>Hernandez</u>, 779 F.2d at 460; <u>see also</u> <u>United States v. Eldridge</u>, 984 F.2d 943, 946-47 (8th Cir.1993).

<u>United States v. Conrad</u>, 320 F.3d. 851, 854 (8th Cir. 2003).

Under federal law "[t]he trial court has broad discretion in controlling the direction of opening

statements and closing arguments," and an appellate court will not reverse in this regard "absent a

showing of abuse of discretion." <u>United States v. Johnson</u>, 968 F.2d 768, 769 (8th Cir.1992). Also,

closing argument of the prosecutor is not improper where it is a fair reply to defense argument.

<u>United States v. Beaman</u>, 361 F.3d 1061, 1065-66 (8th Cir. 2004).

Recently, the Eighth Circuit has held, in regard to an allegation of ineffective assistance of

counsel due to counsel's failure to object to the prosecutor's argument, that:

> "To establish ineffective assistance of counsel for failing to object to a prosecutor's closing argument, [a habeas petitioner] must demonstrate, as in every ineffective assistance claim, not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different." Bucklew, 436 F.3d at 1021. We will grant habeas relief if the prosecutor's comments were so inappropriate as to make the trial fundamentally unfair and the resulting conviction a denial of due process. See Darden v. Wainwright, 477 U.S. 168, 180-81 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

Middleton v. Roper, Slip Op. No. 04-3160 at 12 (8th Cir. July 2006).

As discussed above, the Missouri appellate court applied the Strickland standard for determining whether a habeas petitioner has received ineffective assistance of counsel. Pursuant to the prejudice prong of the Strickland test the Missouri appellate court concluded that Petitioner can not establish that he was prejudiced by counsel's failure to object to the prosecutor's closing argument which addressed Petitioner's testimony that upon arrest he invoked his right to silence. The Missouri appellate court based this conclusion on its reasoning that the argument to which Petitioner contends his counsel should have objected was not improper. This court notes that Petitioner's counsel argued that Petitioner testified because he wanted to tell the jury what happened and the prosecutor's allegedly objectionable argument addressed this argument of defense counsel by suggesting that Petitioner could have told his story on the day he was arrested. Thus, the objection which Petitioner contends his counsel should have made would not have been sustained. Consistent with federal law, the allegedly objectionable prosecutorial argument was properly made in response to Petitioner's argument regarding his desire to tell police what happened. See Beaman, 361 F.3d at 1065-66. Moreover, as provided by federal law, because an objection to the prosecutor's closing argument would have been meritless, Petitioner cannot establish that the outcome of his trial would have been different had counsel objected to the prosecutor's closing argument. Middleton, Slip Op.

42

at 12. As such, this court finds that the decision of the Missouri appellate court finding that Petitioner did not receive ineffective assistance of counsel as alleged in Ground 8 is not contrary to federal law and that it is a reasonable application of federal law. See Darden, 477 U.S. at 181; Strickland, 466 U.S. at 687; Beaman, 361 F.3d at 1065-66; Conrad, 320 F.3d. at 854. The court further finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 8 is without merit and that it should be dismissed.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1-5 are not cognizable pursuant to § 2254. The court further finds that Ground 6-8 are without merit and that, alternatively, Grounds 1-5 are without merit. As such, the court finds that Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

**ACCORDINGLY**,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [4 ]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time

for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of  November, 2006.